Next case is San Jose Healthcare Systems v. Stationary Engineers Local 39 Pension Trust Fund Good morning, your honors. Roberta Perkins, Weinberg, Roger Rosenfeld. I'm here with my colleague Linda Baldwin-Jones on behalf of the Stationary Engineers Local 39 Pension Trust Fund. We're here today because the arbitrator's decision did not contain a single sentence saying Article 9 of the trust agreement, which applies only in deadlocks between the trustees, does not apply in a collection action. So your position is that there have to be two arbitrations. The first arbitration is to determine under the collective bargaining agreement whether the two employees are covered. Once that's established, then the arbitrator from the pension plan can go forward to determine if the employer owes contributions. That is certainly not the pension funds position. That was what the district court found. Was that the practical result of what you're asking us to uphold here? We are challenging the district court's decision on the ground that that two-step process... Well, you call it two-step, but I call it two arbitrations. It would be. It would be two arbitrations, exactly. Can you cite one other instance in labor law where we've required two separate arbitrations to resolve a simple claim of whether or not the employer owes the fund for the work that was done by these two per diem employees? Well, actually, no. There are no decisions because... So this would be the first? Yes. You want us to boldly go where no other circuit has gone before? Oh, that is not correct. Many other circuits. The United States Supreme Court in Schneider Moving said, absent clear intent of the trust fund to submit to a collective bargaining... a grievance process in a collective bargaining agreement, the trust fund has its own right and indeed a fiduciary obligation to collect delinquent contributions. In Schneider Moving, this circuit in the Babcock and Wilson construction case says you cannot infer an intent on the part of the trust fund to be bound to a CBA grievance procedure. That cannot be presumed. The BLA-Delco or Blah-Delco decision out of this circuit, the Orange Belt District Council of Painters decision out of this circuit, the McCullough versus Lowe's Markets decision all say trust funds do not have to subordinate to a grievance procedure in a collective bargaining process. I don't think it's a stretch to say we're going to boldly go where no district has ever gone before. The D.C. Circuit agrees with this. The Second Circuit agrees with this approach. The Seventh and the Eighth Circuits agree with this approach. I just don't see how the arbitrator for the pension plan can arbitrate a claim and enter an order, an award, telling an employer that it has to pay without making some preliminary determination as to whether or not these employees are even covered beneficiaries under the pension plan. The arbitrator here didn't do that. The arbitrator who is a longtime labor arbitrator, arbitrator Riker, went through and said, I have authority to interpret the collective bargaining agreement to determine whether these two individuals were or were not per diem employees and to make the determination whether or not contributions are owed. The district court rejected that determination, arbitrator Riker's determination of his own authority, and that was the district court's first error because on review, the district court had no right to reject the findings of the arbitrator's power. I appreciate the arbitration before, under the collective bargaining agreement, if it isn't the arbitrator who, let me rephrase the question, doesn't it require either the employer or the union to grieve the failure to pay in order to invoke the arbitration procedures under the CBA because the fund is not a party to that agreement. It is correct that the union or the employer would have to invoke the grievance procedure under the CBA. We're not under the CBA here. We are acting under the trust agreement which explicitly says that the trust fund is not bound by any grievance or arbitration procedure in a collective bargaining agreement. But now you have us in a catch-22 situation. Somebody has to determine whether or not these two per diem employees are covered beneficiaries under the pension plan, right? And if the answer is yes, then the arbitrator should enter an award telling the employer, you've got to pay the arrears. That's exactly what happened here. Okay, but who would initiate the arbitration in order to make the preliminary determination that these two employees are beneficiaries of the pension fund? The pension fund and the arbitrator. It is the pension fund acting under the trust agreement. The pension fund and the union are legally separate entities. I understand that. But how can the arbitrator under the pension fund decide the question of whether the employer has to pay without making a preliminary determination as to whether these individuals are even covered? In this particular case, that decision could not be made without interpreting the provisions of the collective bargaining agreement. Which would require an arbitration demand by either the union or the employer under your theory of the case. No, that is not our theory of the case. The collective bargaining agreement. Our theory of the case, that's regional's theory of the case. Our theory of the case is that the trust fund has the sole and independent right to determine whether or not contributions are owed, even if that requires interpreting the CBA to determine whether the persons are covered employees. Right. That's Schneider moving. Your position is the arbitrator can make that, has to make that determination. Correct. Okay. And the district court was wrong when it said, no, you exceeded your authority. I mean, maybe I should be having this discussion with the district judge because I frankly don't understand how he got where he came out. Well, I will be honest with you. In a decision where we argued Schneider moving, we argued third-party beneficiary, and the fund is a third-party beneficiary to the CBA with independent rights to enforce the provisions that inure to it. We argued all of this below. The decision comes out and none of these cases are mentioned. There's no attempt to distinguish Schneider. There's no attempt to discuss Bladelko, Rose's transfer, none of that. So it too is very perplexing to me. And I will just, I'd like to point out on a practical level, the two arbitrations or proceeding first under the collective bargaining agreement will never work in the trust fund situation. Generally, a trust fund isn't going to know when contributions are not being made. The trust fund had no reason until an audit was performed to determine whether or not contributions for Steve Keith and Kevin Keith had been paid. That only came by way of an audit. Can you tell me, as I understand, the employer paid for three of the five employees but refuses these two. What were the factual differences? The factual differences is that the three employees for whom the employer paid were actually employees. Regular full-time employees? Regular full-time employees. Steve Keith and Kevin Keith came in as per diem employees. And the arbitrator said if they work more than 90 hours, then the employer has to pay. Correct. It was 90 days. If they work more than 90 days, the employer has to pay. So the regional, the employer said, no, that's not how we interpret section one of the collective bargaining agreement, that we never have to pay for per diem employees. The fund's position was, well, no, the language of section one is clear. I mean, it reads out the 90-day provision of the agreement. Yes, yes. And so that's where this dispute comes up. Okay. If we hypothetically agree that the arbitrator's reading of the trust agreement was plausible, do we have to address whether Schneider applies here at all? If you find it was plausible, I think you should address whether Schneider applies to one more time clarify that a trust fund's collection action is not subordinate, absent explicit intent on the part of the trust fund to a collective bargaining agreement. That apparently was lost on the district judge. I understand that you like that ruling, but do we have to, or can we just rely on the trust agreement itself, assuming that we think it's plausible? I know it's a little bit intertwined a little bit, but I'm just trying to see if just, you know, theoretical level, whether you have to address both. Hypothetically, you could say the arbitrator's interpretation that article nine does not apply and that he has the power under the trust agreement to interpret the CBA, make the findings that were made in the decision. That is, that would deal with Schneider moving altogether. I mean, you could make that finding, and that would be a sufficient basis to reverse. Do you want to reserve any time for rebuttal? Yeah, I'm sorry. I forgot to do that.  Just before I stop here, the records portion, there is two portions to this arbitration, the money, the delinquencies, and the employer's failure to provide records for the second audit. The pension fund moved to confirm that portion of the award at the district court level. That was really not contested much by regional. The district court did not address the records issue at all. It is clear that under article six, section 6.04, the arbitrator clearly had the authority to order the records, and section 6.04 also makes it quite clear that it is the trust fund and the auditors of the trust fund who determine what records are necessary. Regional flatly refused to produce them for the second audit, even though they had produced them for the first audit without any issue, and we would suggest that that portion of arbitrator Riker's order needs to be confirmed. There was no contest about the records. I will reserve my remaining time, unless you have further questions. Thank you. May it please the court? I'm Patricia Griffith for the Appalachian Hospital. At the core of this is the issue of whether the hospital abdicated to the trust, which is not a party to the collective bargaining agreement, the power to allow its arbitrator to dictate the scope of the bargaining unit between the hospital and the union, and it did not. The trust fund arbitrator has no authority from any source to expand the bargaining unit. That determination has always been housed with the hospital and the union and the National Labor Relations Board. The fund can't just waltz in and diminish representational status of the union in the eyes of employees, which would be an 885 violation under the National Labor Relations Act, by obtaining something that the union has repeatedly been unable to obtain in bargaining, and that is to include the per diems in the bargaining unit. Specifically, nowhere does the trust agreement give its arbitrator carte blanche to interpret the collective bargaining agreement. In fact, it says exactly the opposite, and that's where the district court went with this case, and correctly. If I can stop you there, the Section 9.04, which says you can't construe the CBA, does say under this article, and that's Article 9, and Article 9, 9.01, says this is only in the event of a trustee deadlock. That seems a plausible reading that the bar against construing the CBA is only in cases where there's a deadlock among the trustees. That would only be plausible, Your Honor, if you did not look at the evolution of the language and of the agreement itself, as the district court did. I think there's a difference between reasonable and plausible. I think maybe your reading is reasonable. Maybe this is what the parties intended as they amended it, but you look at the plain language, and it's plausible. I mean, that's a very, very low bar. I mean, we're very deferential to, I mean, besides just completely ignoring the law or corruption. I mean, we uphold arbitration awards all the time. I understand it's a burden, Your Honor, but I think this is the case of any case that cries out for vacature of the arbitration, and that is not only because of the language and the evolution of the language that can only be seen as the arbitrator exceeding his power, which includes the public policy considerations of such an award, because he just completely ignored all of that. I mean, it's just hard to get around the plain language of these provisions. Again, you know, maybe you're right. That's a better reading. Yours is a better reading, looking at the history of it. But, again, under a plausibility standard, I mean, when you just look at the language, it's a plausible reading. Well, Your Honor, I think you also have to look at the language of the other portions of it, even aside from 9.04. If you look at the fact that at the outset of the trust agreement, it also had language of 4.03 in it at that time, the original agreement. And that subsection gave the trustees the right to enforce prompt payment of contributions without having to go through the CBA's grievance procedure. But it didn't allow the trustee to arbitrate those issues. Okay? Again, the arbitration at that time was limited to matters dealing with the administration of the fund, which is the only arbitration that existed at the initial outset under 9.04. So from a practical standpoint, how do we resolve the question of unpaid benefits or unpaid premiums, I guess you'd call them? Well, Your Honor, in the initial agreement that only had arbitrations for the limited purpose of administration of the fund, which, of course, had nothing to do with the collective bargaining agreement. Well, it does to this extent. The arbitrator has to determine whether or not the employees for whom the employer has withheld the payment are actually beneficiaries of the pension fund. Does it not? It does not, Your Honor. Well, then doesn't it require then two arbitrations, that same conversation I was having with your opponent? It does not require that. The district court suggested that as one alternative. But the trust agreement has always had a provision in it from the get-go when there was only one thing that could be arbitrated. And remember, at that point, it specifically said you cannot interpret the CBA. That's what it says under this article, and that's the only article that existed. But if the employer is taking the position that per diem employees are not covered, therefore we don't have to pay for them, how, as a practical matter, does the arbitrator resolve the question as to whether or not the fund is owed additional payments? Well, again, the original fund agreement – to answer the question, you'd have to look at the CBA. Your Honor, two things I would like to say about that. The first is, under 6.02, which has always been in the agreement, the fund had the right to sue, not arbitrate. 6.02, the Board of Trustees shall have the power to claim, demand, collect, receive, sue for, and hold all payments of money due this fund by any employer. So it was not something that was subject to arbitration. They had to bring a 301 action. And is there a provision for recovery of attorneys' fees and costs of bringing that action? Because we're talking about – what's the amount of money here? Maybe $10,000 or something? Very small, Your Honor. Yeah, so we'd burn that up in attorneys' fees. Would the fund be able to collect those costs? I'm not sure about the answer to that question, Your Honor. I'd have to look back at the agreement. But it's a matter of contract as to what the parties agreed to. And they agreed that that was the proper procedure, a suit, not an arbitration. It was only later when – well, I will say this. It was first amended in 1996, and it added 6.06. And again, at that time, 6.06 talked about the power to determine eligibility of participants. And that could only be – that was the only thing that existed, excuse me, 6.06, that the fund could determine the eligibility of participants. And again, it did not give it the right to do that by arbitration. That 6.06 existed back when 904 was the only thing about arbitration in the agreement. And it said specifically in all other aspects the trust agreement is in full force in effect. So again, it had the right to sue, but it didn't have the right to arbitrate. Then later in 1998, when the trust agreement was amended to add Section 4.04, which provided for this expedited arbitration situation, it provided only for expedited arbitration of the amount of delinquent contributions. And the underlying premise that a trust arbitrator could not interpret the CBA, as was said under 9.04, remained intact. Indeed, when they amended 4.04 and added it, it referred back to Article 9, and it ended with the statement that in all other respects, the original agreement remained in full force in effect. Now, did it specifically refer back to Article 9, or did it just say in all respects remains in effect? It specifically referred back to Article 9.03, incorporating 9.03, so it was clear that the drafters knew Article 9 was there and said in all other respects it's in force in effect. And the district court talked about that in her opinion. And, Your Honor, the same thing was true when then it was amended again in 2012 to allow for this same expedited process for audit compliance. It concluded also with the expressed acknowledgment that except as expressly modified, the original agreement was reaffirmed and in full force in effect. Now, all of which is to say that if the parties intended the drastic and significant change that was going to allow a trust fund arbitrator under an expedited process with no due process protections to interpret the collective bargaining agreement in terms of who and the scope of who's in the unit, the trust agreement would have said that, and it doesn't. And that conclusion- Let me ask a kind of I guess I'll call it a mega question. The amount of money at stake in this case is very small. Why are both sides here in the Ninth Circuit with a lot of fees and so on, on what looks like a small question? Is there something bigger that's at stake behind this case that I don't understand or don't see? Yes, Your Honor. This is what I would say no small matter because who's in the bargaining unit is a matter that has been bargained intensely between the hospital and the union for years. In fact, they're in negotiations now about it. And there's no question between the hospital and the union that per diem employees have never been in the union. They've not paid on the same union wage scale because they don't get benefits. They're paid a higher wage scale for the very reason that they don't get benefits. So for the trust arbitrator to come in and now say they're entitled to benefits is just astounding. I mean, for example, I mean, I guess to answer your question, yes, the very balance of the relationship between the hospital and the union is at stake because if the per diem employees, for example, are now miraculously in the bargaining unit and get pension benefits, can the hospital now cut their wages and put them on the union wage scale? And if so, does the hospital have to bargain with the union before it does so because per diem employees are now by fund fiat part of the bargaining unit? Or do we risk violating the National Labor Relations Act by unilaterally implementing a wage change? I mean, so to answer your question, yes, sir. That's the very problem we have here. And none of the cases cited by the union, and I would submit is probably why the district court didn't talk about them, are applicable. Those cases are all dealing with a situation where the trust fund document had nothing in there about arbitration. And the employer was saying you trust fund have to go and use the collective bargaining agreements, grievance and arbitration mechanism. That is not what we have here. We have a completely different situation. None of those cases involve a situation where there's trust fund language, not only that there is an expedited arbitration for amounts due, amounts only, not who's in the unit. But we have trust fund language here, unlike in the Snyder and other cases, that specifically says under 904 you can interpret the CBA. And that was the clear intent of the parties from the get-go. It also, in those cases, there's no evidence that there is a CBA language that said, as we have here, that the scope of the grievance and arbitration provision of the CBA is the sole mechanism for interpreting the terms of the collective bargaining agreement. And I would say, you know, Your Honor, that it's a slippery slope because this case is very different. I don't think there's any case out there where any court has said that a trust arbitrator has the authority to determine the scope of the unit. Well, except this agreement, I guess you could blame the lawyers who amended it, you know, maybe in Article IV they should have made it clear that, you know, you can't interpret the CBN arbitrations, or maybe amend Article IX and say it's not, you know, it doesn't apply just only under this article. So it really just comes down to, you know, maybe the lawyers should have clarified it. If we were reviewing a de novo, maybe that could be different, but the parties also chose arbitration. So, you know, you kind of lie in the bed you made here. Well, Your Honor, you know, I would submit to you that it is clear that if you look at the evolution of the language, that it is, and that if you look at the public policy ramifications, which is encompassed within exceeding the power of the arbitrator under the scope of the CBA, that the district court's opinion should be upheld. And I know I'm about out of time. So is a judge going to have to interpret the CBA in order to determine whether these two employees are covered? The judge – In the lawsuit that you say the fund is limited to bringing in order to collect the payment. Yes, sir. If that's the option that they go down, and that happens all the time, you know, in 301 actions, if somebody believes that the collective bargaining agreement is incorrect. And that's the procedure that the parties negotiated. And it was always there, and that's under, I think I said 6.02. I'm out of time. Great. Thank you. Unless there are any other questions. Thank you. Very briefly. The arbitrator determined who was covered under the agreement, and that has already happened. It wouldn't be a question for the district court on confirming or vacating the arbitration award. The trust fund has an independent right to enforce obligations owed to the trust fund. It indeed has the right to sue, collect, enforce, but the provisions of Article VI don't limit the trust fund to simply filing a lawsuit under Section 301 or filing a collection action under ERISA to enforce its obligations. The trust fund set up the expedited arbitration process, hopefully with the intent of avoiding where we're at right now, which is in the Ninth Circuit after a lot of time and a lot of attorneys' fees. The trust fund is set up by the trustees. It is not an agreement between the union and the employer. It is set up by the trustees. I will point out one more time, we discussed this in our brief, that the deadlock language in the trust agreement is required under the LMRA. It is definitely limited to deadlocks. And with respect to the reference of Article IX, Section 9.03, in Article IV, this is at excerpts of the record at 105, this is in the first subsection setting forth the procedures that the fund is to go through before instituting arbitration. It says at the very end, in the event the arbitrator shall be and is hereby empowered to enter a default award against an employer, which award shall include all of the costs and fees incurred by the fund in collection, including fees of the arbitrator as set forth in Article IX, Section 9.03. Section 9.03 simply says the reasonable expenses of any such arbitration, including necessary court proceedings to secure the appointment of a neutral arbitrator in the event of a deadlock, I'm not quoting that, results in an award of fees and expenses. The mention of Section 9.03 in Article IV is in no way intended to, nor does it say that the arbitrator in a collection action under Article IV cannot interpret the CBA. And unless you have anything further, I'll submit. Great. The case has been submitted. Thank you. Thank you.
judges: FLETCHER, TALLMAN, LEE